William Weinstein for Appellants, Keith Litman and Robert Wachtell. At the outset, I'd like to reserve three minutes of rebuttal time. You can assume that we're familiar with the facts, if you want to get into the heart of your argument. I will, Your Honor. I actually have three points this morning. The first point is that HOMA clearly controls here. The only issue in this case is whether or not Muhammad, the New Jersey Supreme Court decision was preempted under the FAA. HOMA clearly decided that it's a neutral decision. Well, there is some tension here, though, is there not? I don't consider there to be any tension under HOMA. I know that parties have raised a potential tension between HOMA and gay, but that tension was under Pennsylvania law. If you're referring to the Cronin decision, which of course is an unpublished decision and not binding precedent, yet I think informative. In Cronin, the parties were arguing under Pennsylvania law that in light of HOMA under New Jersey law, we were entitled, the plaintiffs there, the appellants were entitled to a second bite at the apple or a second review of the issues there. I happen to consider gay to be correct in its result. I've gone through it. Of course, there's the argument that the ultimate determination and the ultimate troubling words, if you were, are dicta. In Cronin, Judge Greenberg, who was the author of gay, and Judge Ambrose, who was on the side of Judge Sloviter, said about gay that ultimately we concluded in dicta that Pennsylvania case law holds that an agreement to arbitrate may be unconscionable simply because it is an agreement to arbitrate. Now whether or not... We can't rely on that unpublished opinion, right? I'm not sure what... I'm sorry, Your Honor. Our rules tell us that we can't. We can't cite that. So why don't you tell us why gay is dicta on this point and not an, quote, alternative holding, unquote, which trumps the later decided HOMA decision. And by the way, they do hold, or at least the HOMA panel also states that it's dicta, so it's not just Cronin. It's a little equivocal on that. It was equivocal. Conceitedly equivocal, and I thought that it was clarified in Cronin. But why don't we drill down to find out where that language occurred in the gay decision? The issue in gay, as described by Judge Greenberg, and we point out in our brief I think seven times, is whether or not you have a right to a judicial action under the CROA, which is the Credit Reform Organization Act, and the Pennsylvania state law equivalent, which is the CSA. And the panel, Judge Greenberg and the panel conclude that there is no right to a judicial action. There was a second issue, whether or not under the CROA you have a right to a judicial class action, and that was also rejected. The decision then goes on to say, while the parties have argued that the lack of a class action is unconscionable, and if we assume what we've already held is not a right, then we address that under the controlling law, and here we've decided that the controlling law is Virginia. So already you're into the first level of dicta, or at least the first level of alternative holding. The panel concludes that under Virginia law there is no right to a class action or a judicial action, and therefore that the argument is rejected. Parties argued alternatively Pennsylvania law should apply. They then addressed Pennsylvania law and evaluated the two cases that were brought to the attention of the court, Lytle and Thibodeau. And there's a full discussion of that, right? I mean, Gay goes on at some length talking about Lytle and Thibodeau and talking all about it. Why is that not an alternative holding? Why is it dicta? I don't have a problem with those holdings, Your Honor. I don't believe that those are dicta, actually, although I do believe that they're an alternative holding. What I think is dicta, because they conclude that Lytle and Thibodeau are hostile to arbitration, and they clearly are hostile to arbitration. Lytle concludes that you can't do what all the federal courts concluded that you could do in terms of an arbitration cutout. Thibodeau says the issue of class certification is so important that we're going to relegate it back to the judiciary rather than the arbitrator. And we know that that's not the law. So they are clearly hostile to arbitration. The thing that the sentence that causes the problem here, actually, there's two points. One is a reference, and I don't have it exactly quoted, but it has to do with parsing, something about parsing the arbitration agreement. And the second sentence is that the Pennsylvania case law holds that an agreement to arbitrate may be unconscionable simply because it is an agreement to arbitrate. Now, that sentence follows all the other sentences where they're talking about hostility to arbitration and all of this. It's pretty removed. It's — that's a very — I don't think that the decision hinges upon that particular piece of language. I don't think it hinges on the parsing language, because parse — the inability to parse is inconsistent with the agreement here, and it's inconsistent with all of this Court's decisions in the past. I would refer the Court to Judge Cowen, your decision in Alexander v. Anthony. You go through and you parse that arbitration agreement like crazy and come up with six different reasons why different provisions are unconscionable, both procedurally unconscionable and substantively unconscionable. And if I might, I'd like to use that as a segue into my second argument. And that is the argument that the FAA prohibits courts from — that could be state courts or federal courts — from engaging in the substantive unconscionability analysis. That is, that you're allowed to engage in procedural unconscionability, but not substantive unconscionability, that when you delve into public policy, that you have violated the FAA. Now, the basis for that argument is the fact that FAA Section 4 says that an arbitration agreement shall be valid, irrevocable, and enforceable, but it can be subject to revocation under any ground that — that isn't a ground that exists at the common law. So it's got to be an even ground. It's got to be something that doesn't treat arbitration agreements differently. Your Honors, what I brought with me today — and I should point out that there are many, many, many decisions that address the enforceability of arbitration agreements under substantive unconscionability. What I've brought with me today — and it's very deep research. I don't know if the Court would allow me to hand up copies. I've given a copy to my opposing counsel. But what I've brought is the joint report to the FAA, the report that's dated January of 1924. I had to dig all over New York City to find it. If the Court would allow me, I'd like to hand up copies. If not for today, then certainly for the convenience of the Court after the argument. You can submit them to the Court, and your opponent will have a reasonable time to make a response. I will do that, Your Honor. But what I would like to do is read several portions from it, if I might. Defendants, by the way, are the defendants' sites to the joint report in their brief. Page 38 of their brief cites to page 38 of the joint report. I'd like to direct the Court to what appears at page 37, 39, and 40. Before you do that, can I ask this question? No matter what's in that report, if the holding the Pennsylvania law discussion resulting in a statement by the Court in Gay is not dicta, it's a holding, do you concede that that would mean we would be bound to follow Gay as opposed to HOMA? Oh, not at all, Your Honor, and that's because Gay is under Pennsylvania law. It's analyzing different decisions. HOMA is readily distinguishable. In order to be bound by Gay, you'd have to find, which the HOMA Court did not, that the Mohammed decision is hostile to arbitration, even though it is entirely neutral to arbitration. I've got your position, thanks. Okay, all right. And by the way, to the extent that there is an argument about hostility in Mohammed, they severed the class action waiver and directed the case to arbitration. In the accompanying case that day, Delta, they held that the class action waiver was unenforce, I'm sorry, that they held that it may be enforceable in certain circumstances where the dollar amount of the claims is substantially large. Just something I'd like to, you and your adversary agree that this is a court issue that should be resolved, not by the arbitrator, is that correct? That's correct, Your Honor. The gateway issue of whether or not the arbitration agreement itself is enforceable. And it's not a decision that should be rendered by an arbitrator. That's correct, Your Honor. Is that by choice? Would that, you say that's the law, or is that merely choice of the party? The parties, to who has that say? I believe that under the controlling case law, Supreme Court case law, that the issue of whether the arbitration agreement itself is enforceable is a question for the court in the first instance. And not for the arbitrator. And in particular here, it's triggered because what the opposing side has done is they've written their arbitration agreement so that if the class action waiver isn't enforceable, it's going to be litigated in federal court. You both agree that the question is whether under the contract law, whatever state we're dealing with, under that state's law, there is an agreement to arbitrate or not is to be determined by the court. That's correct, Your Honor. In fact, Muhammad specifically deals with that issue also. Yeah, all right, I understand. OK. Just wanted to clear the air. What the joint report says are three things that is interesting. One, with respect to whether you can use substantive law, they're talking about the federal state balance. And they say on page 37, to be sure whether or not a contract exists is a question of the substantive law of the jurisdiction wherein the contract was made. So the joint report expressly incorporates substantive law. At page 39, they quote to Justice Cardozo, then Judge Cardozo of the New York Court of Appeals at that point, in a decision called Matter of Berkowitz. And what this, it's dealing with when it's enforceable, when it's not enforceable. And what Judge Cardozo says is that with respect to arbitration agreements, of course we exclude cases where the contract is inherently immoral or in contravention of the statute. So they're clearly incorporating public policy concerns also. In fact, I believe he refers to public policy right after that. You're running out of time, so why don't you move ahead with. My third argument, or my third very quick argument, Your Honor, is just to refer to the Volk decision. Here, the parties clearly intended that if there was some reason that the class action waiver wasn't enforceable, that we'd be in Federal court. I think that the way this is proceeding, if you don't rule that way, you give the other side the opportunity to pick and choose when they're going to be in Federal court, when they're not going to be in Federal court, when they're going to enforce their arbitration clause, when they're not going to enforce their arbitration clause, but the clear thing is the parties intended to be in Federal court here, defendant did not intend to be in arbitration if that class action waiver wasn't enforceable for some reason under State law. So I will reserve the rest then if the Court has no further questions for my rebuttal. Thank you, Mr. Weinstein. Thank you, Your Honor. Mr. McBride. Good morning, Your Honors. May it please the Court, Andrew McBride on behalf of Verizon Wireless. I heard two concessions at this podium that I think are fatal to plaintiff's case. One is that the ruling in Gay is an alternative holding, and clearly it is. Four and a half pages long, a complete discussion of Pennsylvania law and a discussion of the principles of Federal preemption. Secondly, we heard that the two cases that Gay dealt with, Thibodeau and Lytle, the two Pennsylvania cases, were hostile to arbitration. And Mohammed is just as hostile to arbitration. It is indistinguishable from those cases in its reasoning. The reasoning is identical, that individual arbitration cannot vindicate consumer rights. And that is hostility to arbitration. Yeah, well, that's the feeling of the Supreme Court, that for whatever reason, and not merely because it's arbitration, that it's against public policy in New Jersey to have this proceeding, to foreclose this proceeding. Why does that show hostility if they show that as a matter of contract law, this is against the public policy of the state? Well, I think the public policy of the state can be preempted by the FAA, and it is here because imposing judicial procedures onto arbitration is discrimination. I mean, it's facially neutral. How can you say, what in HOMA dictates that it is hostile to arbitration when in New Jersey, I can tell you this, I am from New Jersey, practically everything is arbitrated. There's very little court proceedings that go forward anymore based on arbitration. And this is all countenance by the Supreme Court of New Jersey. I, too, am from New Jersey, Judge Cowen. I think that the key point here is that what you can't do, and what Gay says, the core holding of Gay, is that you can't take Rule 23 of the Federal Rules of Civil Procedure and force it into arbitration. Arbitration is, after all, alternative dispute resolution. Well, if you're gonna turn it into court, isn't that the same thing as forcing people into court? And doesn't that show, doesn't it show a hostility to arbitration when the New Jersey Supreme Court- Is it an amorphous hostility to arbitration that's a problem under Supreme Court law, or is it a specific denial of the opportunity to arbitrate that the FAA demands? Let me ask it more pointedly. HOMA seems to be saying, at least they look to Mohammed and say, Mohammed says straight up, if you deny people a class dispute resolution mechanism, whether it's in court or in arbitration, if you deny them in a contract of adhesion a class dispute resolution, that's against our public policy. We don't care, is the subtext, according to your opponent. We don't care whether that class dispute resolution happens in a courtroom or it happens in arbitration. On that, we're agnostic. But to say there's no class dispute resolution at all, that's void as against the public policy of the state of New Jersey. Now that's the issue that I would like to hear you speak to. What is it about that, if they've accurately portrayed that as the holding of Mohammed, why would that be a violation of the FAA? Your Honor, that same protestation of neutrality was contained in Thibodeau, and the gay court said, ostensibly neutral, which I think is correct. Because treating dissimilar things in a similar manner is discrimination. How is it treating dissimilar things in a similar manner? I'm sorry, Your Honor, because arbitration is meant to be different from court. And in pressing rule 23 on arbitration is saying, we're going to make arbitration look like court. Isn't that the same hostility, just a new twist on it, as saying, you're not allowed to go to arbitration, you have to go to court? So your position depends upon a statement that arbitration by definition couldn't be class arbitration because that is the importation, the wrongful importation of court-style proceedings. Doesn't go that far, Your Honor, simply that the parties are allowed to choose between class arbitration. If you look at the FAA, and you look at Section 3 and Section 4, they both use the words in accordance with the terms of the contract, in terms of arbitration. And that's all we're saying here, is that the parties can make a choice. Mohammed forces parties to involuntary arbitration that neither party actually agreed to. Neither party in this case agreed to class arbitration, but that's- Isn't the end of your position, though, doesn't the end of your position have to be there can never be class arbitration if, because the construct we're working with in here is contracts of adhesion, right? Within that construct, if the party with all the power can say, you will never arbitrate by class, and you will never arbitrate, and you will never have class action in court, how is it hostile to arbitration for the state courts to say, we won't tolerate that? That at least class dispute resolution has to, in some form, has to be left open, and we don't care which form. Explain to me how that's hostile to the notion of arbitration. It's hostile to the party's agreement that arbitration will be individual. Under Mohammed, there will be no individual arbitration. There can only be- When you say that's the party's agreement, because we're in the construct of a contract of adhesion, right? In other words, one party, I mean, maybe I'm misunderstanding, but I was under the impression that Mohammed was based on the notion that the individual who's bargaining with the real power can't change that. It's given to them. They've got to accept it. But the center of Mohammed, and Mohammed says this under the Rudbart factors, is the public policy holding, which is the holding that individual arbitration is contrary to the public policy of the state of New Jersey. The public policy of the FAA is clearly in favor of arbitration, and in favor of enforcing arbitration clauses according to the terms the party selected. Yeah, but even under Mohammed, if the party's, if it is not a contract of adhesion, if there's equal or mere bargaining power, a party can do anything they want, and the court is, and you cannot interfere with that actual agreement under some state public policy. But the only reason we're here is because this is given as a contract of adhesion, which I understand you really didn't contest. You've never contested that in the record of this case. No, this is a standard form contract, Your Honor. But what I would say is that the New Jersey Supreme Court is not entitled to decide which arbitration agreements get enforced and which don't on a matter of New Jersey public policy because of the Federal Arbitration Act. In fact, what the court has done is carve out a class of contracts that as a matter of law cannot have individual arbitration clauses. And now we're going to have the New Jersey Supreme Court balancing cases between Mohammed and Delta funding, deciding when and where arbitration clauses can be valid. And think, can Mohammed be read to say not we're opposed to individual arbitration, but simply to say we're opposed to the denial of the opportunity for class arbitration? What is it, what do you point to in Mohammed that says we can't accept in New Jersey individual arbitration? Mohammed says that all the incidents of class action are absolutely necessary to vindicate consumer rights. That is in fact not true. It's an assumption made by Mohammed that individual arbitration doesn't work. That is the same hostility to arbitration that the FAA was meant to stop. And there's no way around it. There is simply no way around the fact that the basis of that decision is that the incidents of a class action are necessary and that without them, without them, it says that arbitration is effectively an exculpatory clause, which is not true. Well, how about in the setting of small claims kinds of disputes? I mean, there's a, your opponents quote an entertaining line from Judge Posner in a case where he says you're either a lunatic or a fanatic to litigate over $30 or in this case, a matter of cents as opposed to dollars. How as a practical matter is the Mohammed court wrong when it says we think that there needs to be some opportunity for class arbitration because there are, there's a classification of disputes that otherwise will never be brought because it would be fundamentally irrational for an individual to bring it without a class mechanism? Well, I think if you look at our clause, Your Honor, it exempts small claims. So you can go to small claims court. It's only larger claims that are subject to the arbitration. I also think that there are two sides to the coin to you would be a fool to litigate the case, which is most cases will settle. Most consumers will receive, who do go to arbitration, will receive settlement. Our clause has a mediation before binding arbitration and that mediation is paid for by us and we will, attorney's fees are available in our arbitration clause. So I don't think you have a case where if you have a $30 claim, if you take it to arbitration it's likely you're going to get $30. And that's what we're talking about here is satisfying consumers individually, not lining the pockets of class action attorneys. And that's, it's an efficient mechanism to get money directly to the consumer and avoid all of the hassle of class action. And in. Well, you're talking about something that's not in the record. There's nothing in this record that indicates that with minimum claims, as Judge Posner articulated, that the thing would ever be adjudicated fairly and correctly. There's nothing in the record that indicates that what New Jersey held in Mohammed is basically incorrect, that a denial of class action is a denial of the claim. Is there anything in the record that I missed that disputes that? No, but I don't have to be right. All I have to have is an arbitration clause that says individual arbitration because New Jersey is not allowed to set up its view, its public policy as against the FAA. Have a number of circuits looked at this and agreed with the rationale of Mohammed that this is against public policy because these claims would never be adjudicated otherwise. This circuit held in Johnson that TILA claims and other claims, there can be a valid individual arbitration only clause. And I would point out. Other circuits have held similarly, haven't they? They have about important federal statutes, Your Honor, because what they've held is that statutory damages are often available, that attorney's fees are available, and that those provide an incentive to both attorneys and individual plaintiffs in arbitration. There was a mention of Alexander, and I just wanted to say that we have no dispute with Alexander, and the factors in Alexander were totally different from here. Our view is that what Gay holds is that where you impress judicial procedures onto arbitration, like Rule 23, you have fundamentally changed the arbitration and you indicated a hostility arbitration. I would point out Justice Breyer's statement in Allied Bruce where he says that arbitration is simpler and the procedures are easier and less expensive, and he's citing a 1984 House report when he says that. Now, think about class action in Rule 23. Think about different kinds of class. Think about the litigation of class certification. And under Mohammed, I ask you, how much of Rule 23 does the New Jersey Supreme Court say has to be in arbitration? Do you have an immediate appeal of certification under 23F? All of these things the New Jersey Supreme Court will have to superintend and say this arbitration clause doesn't meet our standard because the class action is not close enough to Rule 23. That is something the New Jersey Supreme Court is not allowed to do. With all due respect, Ninth Circuit is in disagreement with the Gay ruling and specifically said so, and in fact, the Ninth Circuit read Gay and Schroer and said the holding of Gay, we disagree with the holding of Gay, just as my opponent has now conceded that it is indeed an alternative holding. How, let me ask you this. You say in Mohammed it's dicta for the Supreme Court of New Jersey to say, in effect, in court or in arbitration, some class dispute resolution mechanism has to be available. Your assertion is that that's a piece of dicta. What makes that dicta? All it had before it was a class arbitration clause. And in fact, I mean. So it was not necessary to the whole. It was not necessary. It was not even, the court said that the other clause, which prohibited class action in court, was part of the contract as a whole, which goes to Judge Cowen's question. It was for the arbitrator, not for the court. The court literally had no authority over that in that case. So if that's the case, shift gears with me for a second. If dicta is a statement or a discussion or a ruling that is not necessary to the holding of the case, and it's clear from Gay that the court was saying Virginia law applies, because that's what they said. And under Virginia law, this is the result. Why is it, if all that, if that's the holding, that everything that happens after it isn't dicta by the same template that you used to judge dicta in Mohammed? One throwaway sentence is not four pages of reasoning about a claim that was briefed by both parties in the case. So lots of dicta is not dicta? Well, the test is also, is it well-reasoned? Is it, if the tests were only, is it absolutely necessary to the decision, there would be no such thing as an alternative holding. This Court's decision in Pardini and other cases indicate that there are alternative holdings. How do you get over Judge Greenberg joining, who wrote Gay, joining the opinion in Cronin? Cronin, as was noted by Judge Jordan, is unpublished, A, but B, and I think it might have been unpublished. It's not precedential, but it's influential for us. We're not bound by it, but we're considering it. It was a per curiam decision, and it notes the tension between Homa and Gay. That's about all it does. It doesn't clean up the mess. Yeah, but Judge Greenberg, who authored Gay, joined that holding. He joined that holding where it was absolutely dicta to discuss any of that because it was found not unconscionable under State law. There was no unconscionability finding under State law in Cronin. Therefore, any discussion of preemption there is truly dictum because there's no need to discuss Federal preemption when you don't have a State finding of unconscionability. Mr. McBride, thank you very much. Thank you, Your Honors. Mr. Weinstein. Can you tell us what a class action procedure looks like in arbitration? They are substantially indistinguishable, and the standards are the same. I did want to address specifically one assertion. The class action rules, and I'm in a class action in jams right now. Of course, the defendants sprint, try to get out twice, but they're still in there. Thanks to the Second Circuit earlier this year. There is a specific rule that allows the arbitrator to issue a partial award after the class decision, and that partial award is immediately appealable. It's not only the same as 23-F, it's better than 23-F because they get to go to court right away in order to challenge that particular ruling on certification. The standards, at least in jams and AAA, are the same. The Supreme Court has written that there's no reason that arbitration is inimicable to class actions or vice versa. Very quickly, I had the pleasure last week of citing Judge Sirica to your decision in Weiss, the one about whether you could buy out class reps, and it's the same concept that the New Jersey Supreme Court here applied in connection with contract analysis. What the courts are seeing, what they're hostile to is not arbitration, they're hostile to exculpation, and that's what's going on here. You've got exculpation, you've got nobody's going to arbitrate for $30. Your answer has a good question. At what price, at what level is it unconscionable? $30 is unconscionable, $40, $50, $250? I mean, you know. The New Jersey Supreme Court decided in the Delta, the accompanying Delta case, that a large enough claim that somebody, you know, thousands of dollars is worthy of litigating, whereas $30 is not. But it's a fact-intensive analysis, and always has been under New Jersey law. They didn't come up with this anew. The Rudebart decision's been around for almost 20 years, and that's how they evaluate it. I do want to point out to the court, again, with respect to the joint report, and Judge Cowen, since you said you're from New Jersey, I was really surprised to see that the FAA is based on two statutes that preexisted it. One is the New York Arbitration Act, and the other was the New Jersey Arbitration Act. So to suggest that New Jersey is hostile to arbitration when they created it is, I believe, inconsistent with the facts. We would be in arbitration here if they wouldn't have included this severability, this unseverability clause. They basically said, we are not going to arbitrate if the class action waiver is held to be unenforceable. Why? They don't want to be in arbitration. They really don't want to be in arbitration. They don't want to be in arbitration with a class action. They don't want to deal with class actions at all. Loudon, by the way, in the Ninth Circuit, did not say that Gaye was wrong. It said that what it was evaluating, which I believe was the Washington Supreme Court decision, was neutral, and that the decision in Gaye was not. By the way, and Judge Jordan, I think you were asking this before, if the definition of dicta is that it's not necessary to its holding, then by definition, the holding in Mohamed that it applies to both contracts in arbitration and outside of arbitration was absolutely critical to its holding because that's how it determined that it wasn't violating the FAA. Thank you, Your Honors. The case was very well argued. The Court would like to have a transcript of the argument and would ask the parties to share the costs of making the transcript. If you would please check with the clerk's office before you leave, they will tell you how to do that. Again, we thank you, and we will take this matter under advisement. Thank you.